UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NANCY AUDINO, | ) Case No. 4:17CV1594 |
| Plaintiff, | ) |
| v. | ) JUDGE DAN AARON POLSTER |
| | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) REPORT AND RECOMMENDATION |

Plaintiff Nancy Audino ("claimant"), for deceased claimant Joseph M. Audino, IV ("Audino" or "decedent"), challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying Audino's applications for a period of disability ("POD") and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381, *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

I. PROCEDURAL HISTORY

On February 10, 2014, Audino protectively filed an application for a POD and on February 11 for DIB, alleging disability beginning September 18, 2011. (R. 9, PageID #: 76, 283-284, 298-308.) Audino listed his physical or mental conditions that limit his ability to work as: "neck, back, wrist, knees, anxiety, [depression], memory [loss], ankles, fears, stomach." (R.

9, PageID #: 302.) Audino's applications were denied initially and upon reconsideration. (R. 9, PageID #: 158-218.) Thereafter, Audino filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (R. 9, PageID #: 237-238.)

The ALJ held the hearing on March 10, 2016. (R. 9, PageID #: 116-157.) Audino appeared at the hearing, was represented by counsel, and testified. (*Id.* at 119-147.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 119, 147-155.) On March 28, 2016, the ALJ found Audino was not disabled. (R. 9, PageID #: 76-109.). Thereafter, Joseph Audino died on May 22, 2016, and his mother, Nancy Audino was substituted as claimant for decedent. (R. 9, PageID #: 70-71.) Because of Audino's death, the SSI claim was dismissed, and this is only a DIB case. *Id.* at 52.

On June 2, 2017, the Appeals Council denied claimant's request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 9, PageID #: 54-57.) On July 30, 2017, claimant filed the underlying complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. Claimant challenges the final decision, arguing the ALJ erred: when asking a hypothetical question that did not address all decedent's symptoms; by not finding the decedent would be off-task a work preclusive amount of time; by not finding that decedent would miss a work preclusive number of days; and by not calling a medical expert to testify regarding the decedent's cervical problems and residual limitations. (R. 12, PageID #: 849.)

II. PERSONAL BACKGROUND INFORMATION

Audino was born on November 1, 1969, and was 43 years old on the date he stopped performing substantial gainful activity ("SGA"). (R. 9, PageID #: 106, 121, 283.) Accordingly,

2

he is considered a younger individual age 18-44.  *See* 20 C.F.R. § 404.1563.  Audino had a limited education and was able to communicate in English.  (R. 9, PageID #: 106, 122.)  He had past work as a millwright, roofer, and combination welder.  (R. 9, PageID #: 149-150, 304.)

### III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in claimant's brief.  Audino filed for DIB benefits in February 2014, alleging disability beginning September 18, 2011.  (R. 9, PageID #: 283-284.)  During the hearing, he testified that his disability began as a result of injuries to his neck and back on September 18, 2011, when he fell into a ditch at a worksite.  (R. 9, PageID #: 126-127.)

As early as July 2010, cervical MRIs indicated Audino had moderate to significant left foraminal narrowing with moderate right foraminal stenosis.  (R. 9, PageID #: 596-597.)  A September 2010 MRI indicated degenerative disc disease and disk protrusion and herniation at C5-C6 and C6-C7 with radicular symptoms and mild left C5 weakness.  *Id.* at PageID #: 419-420.  The decedent had radiofrequency neurotomies and nerve blocks in September 2010, December 2010, April 2014, and May 2014.  *Id.* at 424, 428, 463-465, 470-472.

The decedent had psychological counseling at Turning Point Counseling from January 2013 through March 2016, to help him cope with chronic pain.  (R. 12, PageID #: 858, citing MER.)  Audino testified at the hearing that counseling for his anxiety and depression was helpful.  (R. 9, PageID #: 129-130.)

---

[1] The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

3

On January 25, 2014, psychiatrist Brian Sullivan, M.D., completed a Medical Assessment of Ability to do Work-Related Activities. (R. 9, PageID #: 658-660.) Dr. Sullivan indicated that decedent had poor or no ability to relate to coworkers, deal with the public, deal with work stresses or maintain attention and concentration. *Id.* at 658. He had a fair ability to interact with supervisors, or to function independently. *Id.* Dr. Sullivan indicated that decedent had poor or no ability to understand, remember, and carry out any type of job instructions, whether simple or complex. *Id.* at 659. He was also assessed as having a fair to poor ability to make personal social adjustments. *Id.*

On April 9, 2014, Paul Scheatzle, D.O., a rehabilitation physician, conducted a physical examination of decedent, with "Manual Muscle Testing," and prepared a report. (R. 9, PageID #: 443-449.) The doctor noted that decedent complained of neck, back, and ankle pain, resulting from the injury noted above, as well as an earlier 2006 work accident. *Id.* at 448. His chart documented a disc protrusion at C5-6 and C6-7. *Id.* Dr. Scheatzle stated that decedent had "chronic neck pain with multi-level cervical spondylosis and facet syndrome." *Id.* at 449. His history and physical suggested bilateral carpal tunnel syndrome. *Id.* Dr. Scheatzle opined that, despite his impairments, decedent would have been capable of "light duty work activities with sitting frequently, standing frequently, change of position every 30 minutes." *Id.* He was capable of lifting up to thirty pounds, and able to carry and handle objects frequently. *Id.*

In completing the "Manual Muscle Testing" form, Dr. Scheatzle indicated that decedent had normal grasp, manipulation, pinch and fine coordination bilaterally. (R. 9, PageID #: 443.) The dynamometer readings were lower, but Dr. Scheatzle considered that muscle testing "not reliable" because he observed "decreasing effort with grip testing." *Id.* Muscle testing also

4

showed a decreased range of motion ("ROM") in the cervical spine, both shoulders, hands and hips, although elbow, wrist, knee and ankle ROM was close to normal. *Id.* at 443-445.

Lumbar x-rays performed on April 9, 2014, showed mild degenerative changes with disc space narrowing, endplate sclerosis, and hypertrophic bone formation. (R. 9, PageID #: 441.) Facet degenerative change was also present. *Id.*

Physical therapist Rochelle Slappy completed a "Medical Assessment of Ability to do Work-Related Activities" on December 8, 2014. (R. 9, PageID #: 537.) Slappy indicated that decedent's physical functions of reaching, feeling, and pushing/pulling were affected by his impairments. *Id.* She stated that these functions were affected by his limited motion, limited strength, pain, and supported by medical findings of shoulder flexion ROM and MMT. *Id.* Slappy indicated that decedent's handling was not affected by his impairments, although she noted low scores in dynamometer grip strength. *Id.*

The decedent presented to Gincy Kandankulam, M.D., on February 23, 2015, complaining of pain. (R. 9, PageID #: 570-572.) Dr. Kandankulam diagnosed him with displacement of cervical intervertebral disc without myelopathy, osteoarthritis, backache (unspecified), benign essential hyptertension, and gastric ulcer. *Id.* at 572. He was prescribed percocet for the backache. *Id.*

The decedent presented to Dr. Kandankulam on April 29, 2015, for a follow-up on blood work related to swelling of his right foot. (R. 9, PageID #: 567-569.) The blood work did not show gout. *Id.* at 568. Audino reported "the percocet is helping [his pain] tremendously." *Id.* At this appointment, Dr. Kandankulam diagnosed him with hyperpotassemia, blood glucose

abnormal, displacement of cervical intervertebral disc without myelopathy, and osteoarthritis. *Id.* at 569-570.

On June 19, 2015, the decedent presented to Chander Kohli, M.D., on referral for evaluation of his neck pain. (R. 9, PageID #: 598-600.) He reported to Dr. Kohli that percocet had helped for some pain relief. *Id.* at 598. Dr. Kohli noted limited movement, particularly laterally, in the cervical spine. *Id.* at 599. Arm strength was noted as normal, except for minimal weakness of the right biceps and triceps, and the left triceps. *Id.* Dr. Kohli reviewed past MRI results with Audino, and recommended that he get updated MRIs, and start neck exercises. *Id.* at 599-600.

An MRI performed on July 7, 2015, revealed no scoliosis or spondylolisthesis. (R. 9, PageID #: 816.) There were mildly bulging discs at C3-C4 and C4-C5, which were causing mild compression of the spinal cord, and the disc at C3-C4 was also causing compression of the left nerve root. *Id.* At C6-C7, there was a large diffusely bulging disc, which was causing mild compression of the thecal sac and severe bilateral narrowing of intervertebral foramen. *Id.* The patient had a follow-up visit with Dr. Kohli later that month to discuss the MRI, and to schedule an anterior cervical fusion of C5-6 and C6-7. *Id.* at 647-650.

Dr. Kohli performed the anterior cervical discectomy and fusion of C5-C6 and C6-C7 on August 3, 2015. (R. 9, PageID #: 652-654.) The decedent testified that, after this surgery, his pain improved. *Id.* at 128; *see also* 733 ("neck/shoulders significantly improved since cervical fusion").

During an October 6, 2015 post-surgical follow-up appointment with Dr. Kohli, Audino reported that his neck was better, but he had weakness in both shoulders, and some mild

6

numbness or tingling in his right arm. (R. 9, PageID #: 644.) The surgeon reported that the fusion was healing well. *Id.*

On November 17, 2015, Audino had a follow-up appointment with Dr. Kohli. He complained of continuing upper back pain and weakness in both shoulders. (R. 9, PageID #: 643.) Audino reported that pain radiated down from his upper back into his lower back and hips. *Id.* The doctor recommended a lumbar MRI. *Id.* According to Audino, his neck pain and numbness in his hand had improved, and he was performing his home exercises, which were helping. *Id.* Dr. Kohli stated: "Patient is cleared for work." *Id.*

A lumbar MRI performed on December 2, 2015, revealed mild degenerative disc disease at L4-L5, but without significant stenosis. (R. 9, PageID #: 813.) There was mild overall degenerative spondylosis at two lower lumbar levels. *Id.* Dr. Kohli discussed the results of the MRI with Audino on December 18, 2015, and recommended a three-day epidural block. *Id.* at 642. On exam, the doctor found no focal motor deficit in the upper extremities. *Id.*

In February 2016, the decedent had a bunionectomy on his right foot. (R. 9, PageID #: 132; *see also* 733.)

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the March 28, 2016, decision:

> 1. [Audino] meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. [Audino] engaged in substantial gainful activity ["SGA"] during the following periods: September 18, 2011, the alleged onset date, through February 15, 2013 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

7

3. However, there has been a continuous 12-month period during which [Audino] did not engage in SGA.

4. [Audino] has the following severe impairments: degenerative disc disease (or "DDD") of the cervical spine with spondylosis and disc herniations; "status post" (s/p) August 2015 two-level anterior discectomy and fusion ("ACDF"); DDD of the lumbar spine; bilateral carpal tunnel syndrome ("CTS"); hallux valgus, capsulitis, and tendonitis of the right foot, s/p January 2016 bunionectomy; depressive disorder; generalized anxiety disorder ("GAD"), panic disorder with agoraphobia, and social phobia; and alcohol abuse in early partial remission (20 CFR 404.1520(c) and 416.920(c)).

5. [Audino] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

6. After careful consideration of the entire record, I find that [Audino] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he will need to alternate to a standing position after every 25 minutes of sitting, and will remain working in the standing position for approximately 5 minutes; and that he is further limited in the following nonexertional abilities:
- Can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; but can never climb ladder[s], ropes, or scaffolds;
- Can frequently handle, finger, and feel with the left or right upper extremities;
- Can perform simple, routine, and repetitive tasks but not at a production rate pace (e.g., assembly-line work); and
- Can have occasional contact with supervisors, coworkers, and the public.

7. [Audino] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. [Audino] was born on November 1, 1969, and was 43 years old, which is defined as a younger individual age 18-44, on the first date he stopped performing SGA in February 2013. On October 31, 2014,[2] [Audino] subsequently changed

---

[2] *See* 20 CFR 404.2(c)(4) and 416.920(c)(4), *Attainment of age* [under Social Security regulations, an individual is deemed to attain a new age on the first moment of the day preceding the anniversary of his birth corresponding to such age]. (Footnote appears in the ALJ's decision.)

> age category to that of a younger individual in the higher age grouping of 45-49 (20 CFR 404.1563 and 416.963).
>
> 9. [Audino] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 11. Considering [Audino]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Audino] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. [Audino] has not been under a disability, as defined in the Social Security Act, from September 18, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 9, PageID #: 79, 80, 82, 85-86, 105-107, 109.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

Wilson v. Commissioner of Social Security, 378 F.3d 541, 548 (6th Cir. 2004).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or

10

substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich. Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII. ANALYSIS

The claimant contends that substantial evidence does not support the ALJ's decision. Rather, the claimant argues:

> [1.] The ALJ erred by not asking a hypothetical question that is reflective of all the symptoms of decedent;
>
> [2.] [The ALJ erred] by not finding the decedent would be off-task to the extent that there would be no jobs available;
>
> [3.] [The ALJ erred] by not finding that decedent would miss work days in excess of those permitted by employers and there would be no jobs available; and
>
> [4.] [The ALJ erred] by not calling a medical expert to testify regarding the significant cervical problems and residual limitations of decedent even after his cervical fusion.

(R. 12, PageID #: 849.) The court does not find claimant's arguments meritorious, for the reasons set forth below.

### A. Hypothetical questions

The claimant contends that the ALJ did not understand the limitations caused by the decedent's cervical conditions. (R. 12, PageID #: 863.) As a result of that misunderstanding,

11

claimant argues, the ALJ's hypothetical questions did not reflect that the decedent could not frequently handle and finger bilaterally. *Id.* at 864.

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays the claimant's physical and mental impairments. *Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (citing cases); *see also Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011) (question must accurately portray claimant's impairments); *Ealy v. Commissioner*, 594 F.3d 504, 516 (6th Cir. 2010) (same). The ALJ's hypothetical questions during the hearing, however, need only incorporate those limitations that the ALJ has accepted as credible. *Parks*, 2011 WL 867214, at *9 (citing *Casey*, 987 F.2d at 1235).

The claimant points to cervical problems that remained after Audino's surgery, and states that the ALJ "did not find the foraminal narrowing, straightening of the lordotic curve and his extremely narrow spinal canal as severe impairments," because the ALJ did not understand the significance. (R. 12, PageID #: 865.) The claimant asserts that cervical problems can cause arm, hand, and finger problems, including manipulation problems. *Id.* at 866. The decedent testified that he could not lift a gallon of milk comfortably or open a new jar because he did not have sufficient grip strength, and that he had difficulty gripping a round door knob. *Id.* at 865. The claimant states that the fusion surgery did not alleviate the decedent's residual cervical problems, and that his grip strength put him in the lower tenth percentile for gripping. (R. 12, PageID #: 866, citing R. 9, PageID #: 443-449, 537.)

Claimant's argument relies upon Dr. Scheatzle's April 9, 2014, report as support for the assertion concerning decedent's grip strength. But Dr. Scheatzle indicated that decedent had

12

normal grasp, manipulation, pinch and fine coordination bilaterally; and, further determined that dynamometer readings were low and "not reliable" because the doctor noted "decreasing effort with grip testing."  (R. 9, PageID #: 443.)  The doctor did note that decedent's history and physical suggested bilateral carpal tunnel syndrome.  *Id.* at 449.  However, Dr. Scheatzle opined that, despite his impairments, Audino was capable of light work with frequent sitting and standing, and a change of position every half hour.  *Id.*  Dr. Scheatzle further opined that Audino was capable to lifting up to thirty pounds, and could carry and handle objects frequently.  *Id.*

The claimant also cites to PT Slappy's December 2014 medical assessment.  (R. 12, PageID #: 866, citing R. 9, PageID #: 537.)  Although Slappy noted low scores in dynamometer grip strength, Slappy indicated that decedent's handling was not affected by his impairments.  (R. 9, PageID #: 537.)

The ALJ's decision determined that the medical evidence did not support gross manipulation or fine fingering deficits.  (R. 9, PageID #: 89, 99.)  The ALJ's finding is supported by substantial evidence.  The two above-referenced medical opinions—which claimant cites in support of the argument that the ALJ erred by not including fingering and handling limitations in his hypothetical question to the vocational expert—do not support such limitations.  The court, therefore, finds no error in the ALJ's hypothetical question addressing fingering and handling, or the resulting RFC.

### B.  Off-Task and Missing Work

The claimant also asserts that the ALJ erred by not finding decedent's impairments would take him off-task and/or cause him to miss work to such a degree that would render no available jobs that he could perform.  (R. 12, PageID #: 849, 870.)  Moreover, the claimant contends that

13

"decedent's severe impairments would render him off-task if he missed one day of work per month or if he were off-task at most 15% of the time." *Id.* at 870. The crux of the argument is that decedent was in such severe pain due to his cervical and back problems, that sitting increased his pain and laying down was his best position. *Id.* The claimant simply relies on argument and supposition as support for this position, and does not cite to any limitations opined by any medical source in the record. *Id.*

A determination of disability requires evidence of more than merely the presence or diagnosis of an impairment; some evidence of the resulting limitation(s) must also be provided. The mere diagnosis of a condition, for example, does not establish either the condition's severity or, more importantly, its effect on the claimant's functional limitations. *Kennedy v. Astrue*, No. 06-6582, 2007 WL 2669153, at *6 (6th Cir. Sept. 7, 2007); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (doctor's reports silent on any limitation resulting from diagnosed arthritis).

There is sufficient evidence in the record contrary of claimant's argument. Indeed, Dr. Scheatzle opined that, despite Audino's impairments, he was capable of light work with frequent sitting and standing. (R.9, PageID #: 449.) After the cervical fusion surgery, Dr. Kohli stated: "Patient is cleared for work." *Id.* at PageID #: 643. The court finds that the ALJ's decision, in this matter, is supported by substantial evidence.

### C. Medications

The claimant asserts that decedent testified that his medications caused drowsiness, and sometimes dizziness. (R. 12, PageID #: 866, citing R. 9, PageID #: 144.) Thus, claimant argues that when the ALJ addressed hypothetical questions to the VE during the administrative hearing,

the hypothetical claimant should have been limited from working around moving machinery. *Id.* at 866-868. But the claimant cites to no medical or other evidence in the record which would support such a limitation, aside from referencing a single comment in the decedent's testimony. *Id.* The ALJ, conversely, reviewed the record and found that it demonstrated the decedent had "frequently stated that has had no side effects" from his medications. (R. 9, PageID #: 97-98, citing MER.) The ALJ found that decedent's testimony about dizziness and drowsiness was not consistent with his own statements in the documentary evidence. *Id.* at 98. The court finds that determination is supported by substantial evidence.

### D. Medical Expert ("ME")

The claimant's final argument asserts that the ALJ erred by not consulting an ME to testify regarding the extent of the decedent's remaining cervical problems post-surgery. (R. 12, PageID #: 849, 866.) In *Long*, this court pointed out that an ALJ is not required to call an ME. *Long ex rel. D.C.P. v. Commissioner of Soc. Sec. Admin.*, No. 1:13CV576, 2014 WL 1333270, at *14 n.28 (N.D. Ohio Mar. 28, 2014); *see also Simpson*, 2009 WL 2628355, at *8 (ALJ has discretion whether to call medical expert); *Davis v. Chater*, 104 F.3d 361, 1996 WL 732298, at *2 (6th Cir. 1996) (TABLE, text in WESTLAW) (per curiam) (ALJ's decision not to call medical expert does not prevent finding that substantial evidence supports ALJ's decision); *O'Neill v. Colvin*, No. 1:13CV867, 2014 WL 3510982, at *18 (N.D. Ohio July 9, 2014); *Touart v. Commissioner of Social Sec. Admin.*, No. 1:12CV0733, 2013 WL 2185848, at *15 (N.D. Ohio May 21, 2013) (ALJ not required to call medical expert). Where the record contains sufficient evidence for the ALJ to decide a disability claim absent expert medical testimony, failure to call

a medical expert will not support remand. *Long*, 2014 WL 1333270, at *14 n.28; *see also O'Neill*, 2014 WL 3510982, at *18; *Touart*, 2013 WL 2185848, at *15.

In his pre-hearing brief and at the conclusion of the hearing, the claimant moved the ALJ to consult an ME. (R. 9, PageID # 76.). The ALJ indicated, during the hearing, that he was not inclined to grant the motion, and that: "Looking at the state of this record, I don't feel that I need a medical expert." (R. 9, PageID #: 155-156.) Although claimant argues that the ALJ erred by not consulting an ME to testify regarding the impacts of decedent's residual cervical problems, R. 12, PageID #: 866, the claimant does not cite to any pertinent limitations opined by any medical source and not addressed by the ALJ. In addition, the ALJ had Audino's full medical record and considered documents addressing his cervical conditions. Moreover, the ALJ's decision adequately explained the reason for not consulting an ME. *Id. a*t 76-77. The ALJ concluded that—after conducting a pre-hearing review of the record, considering the hearing evidence, and considering Audino's impairments—there was no need for an ME "to assist in evaluating and interpreting any medical test data" and the sequential disability "evaluation process d[id] not require ME guidance on evaluation of symptoms…." *Id. a*t 77. The medical record before the ALJ contained sufficient evidence, which the ALJ considered when deciding claimant's disability claim. Substantial evidence supports the ALJ's decision, and claimant's argument to the contrary is not persuasive.

## VIII. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/*David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date:  July 5, 2018

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).